IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREN L. MILLER, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:20-cv-00234-RAL (Erie) |
| | ) | |
| vs. | ) | THE HON. RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| KNIGHT, et al. | ) | |
| | ) | MEMORANDUM OPINION ON |
| Defendants | ) | DEFENDANTS' MOTION TO DISMISS |
| | ) | FOR FAILURE TO STATE A CLAIM |
| | | ECF No. 14 |

I.     Introduction

Plaintiff Darren L. Miller, an inmate in the custody of the Pennsylvania Department of Corrections (DOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 against several Defendants employed at the State Correctional Institution at Albion (SCI-Albion). Miller's Complaint (ECF No. 8) is not divided into counts. Miller has sued all Defendants in both their individual and official capacities. ECF No. 8, ¶ 12. He alleges violations of his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

Miller began this action by moving to proceed in forma pauperis, which the Court granted. ECF No. 6. The Defendants moved to dismiss his Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 14, 15. On Miller's motion, the Court extended the deadline for Miller to respond to the Motion to Dismiss until February 22, 2021. ECF No. 18. When Miller failed to respond, the Court issued a show cause order. ECF No. 19. Because Miller has still not filed a response, the Court will decide the Defendants' motion without Miller's response.[1]

---

[1] The Court's show cause order warned, "failure to file…a brief in opposition to the Motion to Dismiss may result in…the Court's deciding of the Motion to Dismiss without any response from Plaintiff."  ECF No. 19.

II.     Miller's Allegations

The Court accepts the following factual allegations in Miller's Complaint as true for purposes of the Defendants' motion to dismiss.  *See US Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  On August 8, 2018, Corrections Officer Knight issued Miller misconduct # B830867 charging him with four counts: possession or use of a dangerous or controlled substance—K2[2] (Class I, # 22); possession of contraband (# 36); lying to an employer (# 42); and failure to report the presence of contraband (# 45).  ECF No. 8, ¶¶ 13, 30.  The next day, Miller submitted paperwork to Corrections Officer Bednaro requesting representation, the ability to present witnesses, witness statements, and his own version of events, but Bednaro refused to submit the paperwork for the hearing.  *Id.*, ¶¶ 14, 38.  Alternatively, Miller alleges that Hearing Examiner Szelewski, who he also names as a defendant, refused to accept the paperwork from Bednaro.  *Id.*, ¶ 38.  Szelewski held a hearing in Miller's absence on August 10, finding him guilty without hearing from his witnesses.  *Id.*, ¶ 15.  Szelewski also relied on an unfounded written statement from an unnamed officer concerning the presence of K2 rather than getting a laboratory test on the alleged drugs.  *Id.*, ¶ 40.

Corrections Officer Byerly—SCI-Albion's misconduct hearing officer—"never gave [Miller] any opportunity to attend his hearing."  *Id.*, ¶ 16.  Miller did not refuse to attend his hearing.  *Id.*  Szelewski sanctioned Miller with sixty days of disciplinary confinement and ordered the contraband confiscated.  *Id.*, ¶ 15.

---

[2] A synthetic version of tetrahydrocannabinol (THC), the psychoactive ingredient in marijuana, K2/Spice is a mixture of plant material sprayed with synthetic psychoactive chemicals.  "Spice/ K2, Synthetic Marijuana," UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana (last accessed Sept. 27, 2021).

Byerly executed a DOC form falsely attesting that Miller had voluntarily signed a waiver of his attendance at the hearing when, if fact, Miller had not signed the waiver and Byerly had not asked Miller to do so.  *Id.*, ¶¶ 17-18, 40.  The paperwork Miller received from the hearing did not mention the documents he tried to submit through Bednaro that requested representation and the opportunity to present witnesses and witness statements.  *Id.*, ¶ 19.

Miller appealed the misconduct, but Defendants Ennis and Flinchbaugh, who serve as members of the Program Review Committee, denied the appeal.  *Id.*, ¶¶ 6-7, 20.  Miller appealed this denial to Defendant Clark, the prison Superintendent, but he never responded.  *Id.*, ¶ 21.  Without alleging supporting facts beyond the circumstances of his own case, Miller asserts that the "DOC has maintained a customary practice of corrections officers denying prisoners' misconduct hearings and falsifying the records to reflect that prisoners voluntarily waive the disciplinary hearing on Form DC-141 Part 2 D and also falsely write that the inmate refused to sign the waiver form."  *Id.*, ¶ 22. Brown also alleges that it is "a well-known problem" throughout the DOC that officers deny inmates the "opportunity to have a hearing, present evidence, and defend [themselves]," *id.*, ¶ 24, that Defendants DOC Secretary John Wetzel, Clark, Szelewski, Ennis, and Flinchbaugh fail to supervise their subordinates and acquiesce in these deprivations, *id.*, ¶¶ 25-26, 29, 41, that Wetzel knows of these issues because of various lawsuits brought by inmates against him and his receipt of inmate request forms, *id.*, ¶¶ 27-28, and that Wetzel fails to supervise DOC employees who violate due process rights, refuses to change DOC policies, and acquiesces in his subordinates violations. *Id.*, ¶ 42.

Miller had planned to present evidence at the misconduct hearing challenging the sufficiency of the test Officer Knight used to identify the K2.  *Id.*, ¶¶ 30-31.  Staff denied Miller's presence at

the hearing because Knight knew that the test used is insufficient and that Miller was prepared to offer evidence to demonstrate its insufficiency.

In the months before August 2018, Knight and other unnamed SCI-Albion security staff would pick out groups of inmates for urine tests. *Id.*, ¶ 32. If the test on an inmate's urine came back clean and the inmate is "someone who files complaints on staff," then Knight and other, unnamed corrections officers "would file false misconducts claiming either papers found in your cell or letters and cards received in the mail tested positive for K2." *Id.*, ¶ 32. Knight filed the "false misconduct" for possession of K2 against Miller "as retaliation for filing complaints." *Id.*, ¶ 36. However, Miller does not identify any complaint he submitted before his misconduct proceeding or appeal or describe the nature or format of any such complaint, including whether it was in the form of a grievance, lawsuit, or some other form. He also does not state the date of any complaint he might have submitted before August 2018. Additionally, Miller further alleges that Knight and others "carried out these actions in order for [the DOC] to push its agenda of the need to drastically overhaul its mail system." *Id.*, ¶ 33.

Because of the false misconduct, Miller received a sanction of sixty days of disciplinary custody which he served in the RHU. *Id.*, ¶ 15. There, harassment by staff aggravated his "mental stability" and "triggered his symptoms of mental illness and psychological disorders, which lead (sic) to [Miller] cutting his arm and swallowing a razor." *Id.*, ¶ 34. The false misconduct also caused unnamed persons to deny Miller parole, although Miller does not explain the connection between the misconduct or sanction and the denial of his parole. *Id.*, ¶¶ 34, 37. Miller requests compensatory and punitive damages, costs, attorney's fees, and any additional relief the Court considers just, proper, and equitable. *Id.*, ¶¶ 43–48.

III.    Standard of Review

A.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions.  *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts in the complaint.  *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations.  *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  *See also McTernan v. City of*

*York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly*/*Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

    B.  *Pro Se* Litigants

While these principles apply to all complaints in federal court, *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).  If the court can reasonably read a *pro se* complaint to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or the litigant's unfamiliarity with pleading requirements.  *Boag v. MacDougall*, 454 U.S. 364, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV.     Analysis

A.  Personal Involvement under 42 U.S.C. § 1983

The Defendants have moved to dismiss the claims against Defendants Clark, Ennis, and Flinchbaugh, arguing that their participation in the appeal process of Miller's misconduct does not establish their personal involvement for purposes of 42 U.S.C. § 1983.  ECF No. 15, p. 7.  The Defendants have also moved to dismiss the claims against DOC Secretary John Wetzel as a defendant based on his lack of personal involvement in any actionable conduct.  *Id.*, pp. 8-9.  They argue that the Complaint does not allege that Wetzel personally participated in the misconduct hearing or that he knew of any facts evidencing an unconstitutional policy or practice.  They contend that Wetzel cannot be held liable based solely on his supervisory capacity.  *Id.*, pp. 8-9.  Each of the Defendants' arguments has merit.

A defendant in a § 1983 action "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."[3]  *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations removed).  It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights."  *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)).  Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient.  *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015).

---

[3] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

To begin, the mere fact that Clark and Wetzel were "supervisors" or had supervisory authority, standing alone, cannot support liability under § 1983. *Hepler v. Wetzel*, 2019 WL 1923004, at *5 (W.D. Pa. Apr. 30, 2019) (citing *Capone v. Marinelli*, 868 F.2d 102, 106 n.7 (3d Cir. 1989)). This is because "[l]iability may not be imposed under § 1983 on the traditional standards of *respondeat superior*." *Id.* Thus, Clark and Wetzel cannot be held liable under a *respondeat superior* theory. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

But "two theories of supervisory liability" are available under § 1983 upon a proper factual showing. *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Under one, "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Miller's Complaint does not allege that Clark and Wetzel themselves established or enforced policies of alleged due process violations at misconduct hearings. Instead, Miller alleges the "DOC has maintained a customary practice of corrections officers denying prisoners' misconduct hearings and falsifying the records" to state that "inmates have waived their hearings and refused to sign the waiver form." ECF No. 8, ¶ 22. Miller's contention that Wetzel and Clark have failed to supervise their subordinates in this regard, *id.*, ¶¶ 25-26, 29, 41, does not support an inference that they established or maintained an unconstitutional policy or practice. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015) ("[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation."). Additionally, "[t]o presume that the [ ] practices arose from [Clark and Wetzel]'s policies merely because of their position as [superintendent and DOC Secretary] is to rely on *respondeat superior*," a theory of liability unavailable in § 1983 actions. *See Parkell v. Danberg*, 833 F.3d 313, 331 (3d Cir. 2016).

8

Under the other theory, a supervisor may be held liable when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* (quoting *A.M.*, 372 F.3d at 586). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Miller's Complaint fails to allege facts to support any form of supervisory liability against Clark or Wetzel.

The Defendants also correctly argue that Ennis, Flinchbaugh, and Clark's participation in the misconduct appeal process does not constitute personal involvement in actionable conduct for purposes of a § 1983 claim. ECF No. 15, pp. 7-8. *See Watson v. Rozum*, 2012 WL 5989202, at *5 (W.D. Pa. Oct. 29, 2012) (collecting cases), *report and recommendation adopted*, 2012 WL 5989245 (W.D. Pa. Nov. 29, 2012). *Stockton v. Wetzel*, 2017 WL 3034800, at *5 (M.D. Pa. July 18, 2017) ("review of a misconduct determination, without more, is insufficient to maintain a claim that these Defendants were personally involved in [the hearing examiner's] alleged due process violations") (citing *Washington v. Showalter*, 494 Fed. Appx. 268, 271-72 (3d Cir. 2012)). *See also Peay v. Fisher*, 2017 WL 1128451, at *13 (M.D. Pa. Mar. 24, 2017) (the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation.") (citation omitted), *aff'd*, 763 Fed. Appx. 248 (3d Cir. 2019). Thus, Miller's allegations that Clark, Ennis, and Flinchbaugh reviewed and denied Miller's misconduct appeals does not support a constitutional claim. *See Saisi*, 822 Fed. Appx. at 48. *See also Coulston v. Glunt*, 2014 WL 808762, at *6 (W.D. Pa. Feb. 28, 2014)

(dismissing defendants who only participated in appeals of misconducts and grievances).  These claims against Ennis, Flinchbaugh, and Clark are dismissed with prejudice.[4]

B.  Retaliation

Miller's allegations that the Defendants issued the false misconduct against him and denied him the right to attend or present evidence or witnesses in retaliation for his having filed "complaints" fails to state a claim.  To state a retaliation claim, a plaintiff must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action.  *Watson v. Rozum,* 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn,* 241 F.3d 330, 333-34 (3d Cir. 2001).

An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights.  *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  This is an objective inquiry.  *See Bistrian v.* Levi, 696 F.3d 352, 376 (3d Cir. 2012).  "Government actions, which standing alone do not violate the

---

[4] The Defendants similarly argue that Wetzel's receipt of a request form categorically cannot establish personal involvement because "receipt of a letter or request slip is insufficient to establish personal involvement (*i.e.*, failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue)." ECF No. 15, p. 8. This argument goes too far.  On the one hand, a request slip received by a corrections officer that only provides after-the-fact notice of some alleged civil rights violation does not show the recipient's personal involvement in the prior violation. *See Enlow v. Beard*, 2013 WL 5332139, at *5 (W.D. Pa. Sept. 23, 2013) ("Plaintiff has not shown personal involvement on the part of the Defendants to whom he allegedly sent inmate request slips informing them of the inappropriate bunk transfer."); *Hill v. Fisher*, 2010 WL 6004059, at *9, (M.D. Pa. Nov. 10, 2010) (dismissing retaliation claim because "submitting a grievance or request slip about a discrete incident that has already happened does not raise a reasonable inference of personal involvement on the part of the defendant to whom the grievance or request slip is submitted."); *McGinnis v. Hammer*, 2017 WL 4286420, at *13 n.7 (W.D. Pa. July 27, 2017).  On the other hand, a corrections officer's receipt of a request slip that raises an objectively serious threat of harm or an ongoing harm to the inmate may establish the recipient's personal involvement in a constitutional violation where the officer fails to act in response to that notice. *Compare Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (the prison official "must actually have known or been aware of the excessive risk to inmate safety") *with Walker v. Glunt*, 654 Fed. Appx. 531, 533 (3d Cir. 2016) (affirming summary judgment for defendant on Eighth Amendment failure to protect claim when he received request slip *after* the inmate-on-inmate attack) *and Rieco v. Moran*, 633 Fed. Appx. 76, 80 (3d Cir. 2015) (request slip sent to defendant corrections officer captain *after* Eighth Amendment claim of food tampering insufficient to establish personal involvement).

Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* at 224 (internal quotation marks and citation omitted). The retaliatory conduct "need not be great in order to be actionable" but must be "more than *de minimus.*" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted).

Without direct evidence, retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). That said, "'[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

Miller's allegations do not support the first or third element of a retaliation claim—that he engaged in "protected activity" and that a causal connection exists between that activity and the Defendants' alleged retaliatory actions. Even under the relatively liberal pleading standard applicable to pro se pleadings, Miller's naked allegation that he "filed complaints" before the false misconduct is not enough to withstand a motion to dismiss. While the "filing of a grievance to complain about [a corrections officer's] behavior is constitutionally protected conduct," *Robinson v. Taylor*, 204 Fed. Appx. 155, 156 (3d Cir. 2006), Miller has not identified any grievance, lawsuit, or verbal complaint he submitted against any prison official. He also has not alleged when he submitted any such "complaint."

Because of these omissions, the Complaint does not support the causation element of his retaliation claim against Knight.[5]  Miller alleges no facts to allow a plausible inference that Knight acted with a retaliatory motive or that a "pattern of antagonism" existed between him and Knight. Miller identifies only the one allegedly false misconduct Knight submitted against him.  *See Lauren W.*, 480 F.3d at 267.  The Complaint also does not support "an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action" because it provides no information regarding when Miller filed "complaints" in relation to the misconduct.  *Id.*  Miller also does not identify who he complained about or whether Knight knew of the complaints.

The retaliation claims against Lieutenant Bednaro, Hearing Examiner Szelewski, and Hearing Examiner Byerly suffer from similar causation deficiencies.  The facts alleged against these Defendants also fail to support a pattern of antagonism, an "an unusually suggestive temporal proximity" between protected activity and adverse action, or any other basis upon which a plausible inference of retaliatory motive could be based.  *Id.*  There is presently no indication that Bednaro, Byerly, or Szelewski knew of any protected activity by Miller before they took any of the actions alleged in the Complaint.

Although the foregoing factual gaps in Miller's Complaint render his retaliation claims legally deficient, the Court is not convinced that amendment to cure these deficiencies would be futile. Accordingly, Miller's retaliation claims will be dismissed without prejudice, and Miller will be granted

---

[5] Miller alleges that the following constituted adverse actions: Knight filing an allegedly false misconduct; Bednaro refusing to submit Miller's paperwork that would have enabled Miller to participate in his misconduct hearing; and Szelewski and Byerly denying him his ability to attend his hearing and refusing to accept Miller's evidence.  For purposes of the present motion, the Court will assume these allegations are sufficient to support the "adverse action" element of his retaliation claim.  *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) ("[plaintiff]'s allegation that he was falsely charged with misconduct in retaliation for filing complaints against [a corrections officer] implicates conduct protected by the First Amendment").
.

leave to file an amended complaint as to these claims against Defendants Knight, Bednaro, Szelewski, and Byerly.

C.   Fourteenth Amendment Due Process Violations

Miller's pleading implicates the Due Process Clause under two theories.  First, Miller presents a procedural due process claim based on his denial of an opportunity to be present for the misconduct hearing and to present evidence during the hearing.  Second, he raises a potential substantive due process claim based on the alleged denial of his parole, which he associates with the allegedly false misconduct charge against him.

1.   Miller's Procedural Due Process Claim Fails Because Sixty Days in Disciplinary Custody Does Not Implicate a Liberty or Property Interest.

To implicate protections under the Due Process Clause of the Fourteenth Amendment, a state actor must deprive the plaintiff of either a property interest or a liberty interest.  *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  The Complaint mentions no loss of property, and Miller has failed to plead a constitutionally protected liberty interest associated with the misconduct hearing or the sanction imposed because of the hearing.  Depriving already-incarcerated persons of liberty requires due process protections only if the deprivation imposes an "atypical and significant hardship…in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  What constitutes an "atypical and significant hardship" depends on the range of conditions an inmate would reasonably expect to encounter while incarcerated.  *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 412 (3d Cir. 1999).  Thus, whether sanctions imposed pursuant to a prison misconduct proceeding implicate the Due Process Clause of the Fourteenth Amendment depends on the severity of the sanctions.  *See Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1974) (when an inmate faces revocation of "good time credits" affecting his criminal sentence, prison officials must (typically) provide him certain due process protections).  But sanctions that fall short of this

13

threshold do not trigger such protection.  In *Sandin*, for example, the Court held that because a thirty-day punitive segregation in the prison was not an atypical or significant hardship for an inmate, it implicated no liberty interest, and thus the protections of the Due Process Clause did not apply.  *Sandin*, 487 U.S. at 487.

Here, Hearing Examiner Szelewski sentenced Miller to sixty days of disciplinary confinement and ordered the confiscation of the alleged contraband.  ECF No. 8, ¶ 15.  This sanction falls well short of an "atypical and significant hardship" sufficient to implicate a liberty interest and trigger procedural due process protections under *Sandin*.  *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months solitary confinement was not an atypical or significant hardship); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (fifteen months administrative segregation).   This precludes Miller's procedural due process claim even if Knight, Bednaro, Szelewski, or Byerly violated DOC or prison policies, procedures, or ethical rules.[6]  *See Lee v. Schrader*, 2014 WL 2112833, at *4 (W.D. Pa. May 20, 2014) ("T]he simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension") (citing *United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (other citations omitted).  The United States Constitution provides the floor of constitutional due process protections below which state officials may not go, but states remain free to create procedures not compelled or enforceable by reference to the Constitution.  *See Shango v. Jurich*, 681 F.2d 1091, 1101-02 (7th Cir. 1982) ("[A] state created procedural right is not itself a liberty interest….States may decide to engage in such proceedings, but

---

[6] Miller argues that the following constituted violations of DOC policies regarding the handling of misconducts: Knight's issuance of the false misconduct itself, ECF No. 8, ¶¶ 13, 30; Bednaro's refusal to convey his paperwork to the hearing examiner(s), *id.*, ¶¶ 14, 38; alternatively, Szelewski's refusal to accept Miller's paperwork, *id.*, ¶ 38; Szelewski's holding of the hearing in Miller's absence and refusal to accept Miller's evidence or hear from his witnesses, *id.*, ¶ 15; Szelewski's finding him guilty based on insufficient evidence, *id.*, ¶ 40; and Byerly falsifying a form stating that Miller voluntarily waived his attendance at the hearing.  *Id.*, ¶¶ 17-18, 40.

the due process clause does not compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at stake.").

      2.   The Complaint Fails to State a Claim Based on Denial of Parole.

Miller alleges that he was denied parole because he was wrongfully found guilty of the false misconduct charge.  This allegation does not implicate procedural due process considerations because neither the United States Constitution nor Pennsylvania law creates a liberty or property interest in parole.[7]  *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir.1996); *Rogers v. Pa. Bd. of Probation and Parole*, 555 Pa. 285, 724 A.2d 319, 323 (Pa. 1999).  Therefore, Miller fails to state a procedural due process claim based on the denial of his parole.  *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Thorpe v. Grillo*, 80 Fed. Appx. 215 (3rd Cir. 2003) (Section 1983 claim); *Malarik v. Attorney Gen. of Pa.*, 2009 WL 3260539, at *1 (W.D. Pa. Oct. 8, 2009).

However, inmates do possess a right under the "substantive" component of the Due Process clause that prohibits officials from denying them parole for "constitutionally impermissible reasons."  *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).  As the Court explained in *Malarik*,

> The United States Court of Appeals for the Third Circuit has held that "even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole *for arbitrary or constitutionally impermissible reasons*."  *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).  Substantive due process prevents a state from denying parole on constitutionally impermissible grounds, such as race or *in retaliation for exercising constitutional rights*.  *Burkett*, 89 F.3d at 140.  In addition, a state may not base a parole decision on factors bearing no rational

---

[7] In *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002), the Court of Appeals stated, "[p]rison disciplinary proceedings may…constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right."  The Court does not understand this quotation to negate the inmate's need to show a liberty or property interest as a threshold requirement for a procedural due process claim.

> relationship to the interests of the Commonwealth.  *Block*, 631 F.2d
> at 237.

*Id.* (emphasis added).  Therefore, in a state such as Pennsylvania that maintains a parole system, an

inmate's substantive due process rights are violated if he is denied parole as an act of retaliation for

his exercise of his First Amendment rights  *See Burkett v. Love*, 89 F.3d 135, 142 (3d Cir. 1996) ("We

merely recognize that an allegation that parole was denied in retaliation for the successful exercise of

the right of access to the courts states a cognizable claim for relief.").  While in general such a

constitutional claim is cognizable in a § 1983 action, Miller has not alleged facts to demonstrate that

he was denied parole for a "constitutionally impermissible reason."  *Block*, 631 F.2d at 236.  *See also*

*Burkett*, 89 F.3d at 142.  As noted, Miller has not alleged facts sufficient to support a retaliation claim

against any Defendant.  In addition, the Complaint does not allege that any Defendant was involved

in the decision to deny parole to Miller.  Rather, it appears that Miller is alleging that a parole

decision made by others was adversely impacted by the existence of the misconduct charge and

guilty finding that certain Defendants wrongfully caused to be on his record.  This appears to

constitute an aspect of damages associated with his currently deficient retaliation claim rather than

the basis for an independent substantive due process claim.  Nevertheless, while Miller's ability to

state a substantive due process claim against the Defendants in this action is questionable, at best,

the Court will dismiss this claim without prejudice and allow Miller the opportunity to amend his

Complaint as to this claim.

### D.  The Fifth Amendment Does Not Apply to State Prison Officials

Miller also alleges that the Defendants violated his rights to Due Process under the Fifth

Amendment.  ECF No. 8, ¶ 37.  The Fifth Amendment applies only to the federal government and

not to the states.  *Scutella v. Erie Cty. Prison*, 2020 WL 7865402, at *5 (W.D. Pa. Nov. 16, 2020) (citing

*Dusenbery v. United States*, 534 U.S. 161, 167 (2002)).  Because Miller's claim is against state prison

officials only, his Fifth Amendment claim fails as a matter of law and must be dismissed with prejudice. *See Leventry v. Watts*, 2007 WL 1469038, at *2 (W.D. Pa. May 17, 2007) (dismissing the plaintiff's Fifth Amendment claim against state actors because "the Fifth Amendment restricts the actions of federal officials, not state actors").

V.      Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002). Leave to amend is inappropriate if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). This instruction applies equally to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Miller may file an amended complaint as to his retaliation and substantive due process claims. His procedural due process and Fifth Amendment claims, however, are dismissed with prejudice.

The Court reminds Miller that an amended complaint "must be complete in all respects. It is a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Williams v. Ferdarko*, 2018 WL 3653272, at *1 n.1 (W.D. Pa. Aug. 1, 2018) (quoting *Young v. Keohane*, 809 F. Supp. 1185, 1189 (M.D. Pa. 1992)). This means that the Amended Complaint must restate all allegations he plans to pursue. In his Amended Complaint, Miller should (1) differentiate his claims among the defendant or defendants he is suing, (2) provide a short and plain statement of the facts in accordance with Rule 8 of the Federal Rules of Civil Procedure, (3) identify what each defendant did or did not do, when, for how long, and if the violations of rights are ongoing, (4) and what relief he is seeking. Because Miller generally lumped his multiple claims

against all Defendants together, the Court invokes Rule 10 for Miller to follow, which prescribes that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances;" because it "would promote clarity, each claim founded on a separate transaction or occurrence…must be stated in a separate count or defense."  Fed. R Civ. P. 10(b).

VI.    Conclusion

The Defendants' Motion to Dismiss for failure to state a claim at ECF No. 14 is GRANTED and Plaintiff's claims are dismissed as follows:

1.  All claims against Defendants Wetzel, Clark, Ennis, and Flinchbaugh are dismissed with prejudice;

2.  Miller's retaliation claims against Knight, Bednaro, Byerly, and Szelewski are dismissed without prejudice and with leave to file an amended complaint;

3.  Miller's Fourteenth Amendment procedural due process claims are dismissed with prejudice as to all Defendants;

4.  Miller's Fourteenth Amendment substantive due process claims are dismissed without prejudice and with leave to file an amended complaint;

5.  Miller's Fifth Amendment claims are dismissed with prejudice as to all Defendants; and

6.   Miller's claims against the Defendants in their official capacities for monetary damages are dismissed with prejudice.[8]

---

[8] The Defendants have immunity for official capacity claims seeking monetary damages.  The Eleventh Amendment proscribes actions for money damages in the federal courts against states, their agencies, and state officials acting within their official capacities. *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity).  The Department of Corrections (DOC), which administers SCI-Albion as an agency of the Commonwealth of Pennsylvania, and its agents and employees, are entitled to Eleventh Amendment immunity for money damages. *See*

Miller shall have twenty-one days from the date of this order to file an amended complaint in accordance with the Court's Memorandum Opinion.  Miller's failure to file an amended complaint within this period will be considered a waiver of his right to amend and, in that event, the Court will enter an order dismissing his remaining complaints with prejudice.


_____
THE HON. RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

Entered this 28th day of September 2021.

---

*Brown v. Smith*, 2019 WL 2411749 (W.D. Pa. June 7, 2019).  All Defendants are DOC employees, so Miller's claims for monetary relief against them in their official capacities must be dismissed with prejudice.